**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL IWANIUSZ,

        Plaintiff,                Case No. _____

v.                               Hon. _____

OFFICER JAMES BRIGGS,
in his individual capacity,

        Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff MICHAEL IWANIUSZ, by and through his attorneys, GIROUX AMBURN PC, states the following for his Complaint against the above-named Defendant:

1.      This is a civil action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the United States Constitution against Defendant OFFICER JAMES BRIGGS in his individual capacity.

2.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b). The events took place within the City of Adrian in Lenawee County

which is located within the Southern Division of the Eastern District of Michigan.

4. At all relevant times, MICHAEL IWANIUSZ was a citizen of the United States residing in the City of Adrian in Lenawee County, Michigan.

5. Upon information and belief, Defendant OFFICER JAMES BRIGGS is a citizen of the State of Michigan and was at all relevant times employed as a police officer for the Adrian Township Police Department.

6. On November 9, 2016, at the time of the events alleged in this Complaint, Defendant OFFICER JAMES BRIGGS was at all times acting in his individual capacity and within the scope of his employment as a police officer employed by the Adrian Township Police Department and under color of State law.

**FACTUAL ALLEGATIONS**

7. The police report regarding this matter indicates that on November 9, 2016, Rosa Shirley called the Adrian Township Police Department, spoke with Defendant OFFICER JAMES BRIGGS, and indicated that her neighbor, Billy Ray Ganun, recently informed her that her other neighbor, Michael Iwaniusz, had been entering onto her property in violation of the personal protection order she had against him.

8. The police report regarding this matter indicates that Defendant

2

OFFICER JAMES BRIGGS had previously seen the personal protection order in question (which was served on September 20, 2016) and that it, among other things, barred Mr. Iwaniusz from entering onto or remaining on property owned, leased, or occupied by Ms. Shirley.

9. The police report indicates Defendant OFFICER JAMES BRIGGS asked Ms. Shirley to have Mr. Ganun meet him at her house, after which he drove to her residence.

10. The police report indicates that, upon arrival at Ms. Shirley's residence, Defendant OFFICER JAMES BRIGGS met with Ms. Shirley and Mr. Ganun, who each claimed Mr. Iwaniusz had recently violated the PPO.

11. The police report indicates that Ganun reported Iwaniusz driving his vehicle through Ms. Shirley's back yard to access his own back yard multiple times on or about November 1, 2016, and Iwaniusz entering onto Shirley's property November 9, 2016 and earlier to dump his dog's feces.

12. The police report indicates that Shirley reported Iwaniusz having pulled up tomato plants growing in her yard and thrown them into her fire pit.

13. The police report indicates that Defendant OFFICER JAMES BRIGGS, Ms. Shirley and Mr. Ganun walked around Ms. Shirley's property and Defendant OFFICER JAMES BRIGGS took note of tire tracks through the grass

through Ms. Shirley's property onto Mr. Iwaniusz property, an area where dog feces had been deposited into the grass in her yard, and dead tomato plants in Ms. Shirley's fire pit.

14.     The police report indicates that Defendant OFFICER JAMES BRIGGS next walked to the front door of the Iwaniusz residence at 3121 Beaver Creek Ridge and rang the doorbell.

15.     The police report indicates that the door was answered by Michael Iwaniusz's wife, Shelly, and that Defendant OFFICER JAMES BRIGGS asked her if he could speak to Michael.

16.     The first thing Defendant OFFICER JAMES BRIGGS said when MICHAEL IWANIUSZ came to the door is: "Why the f*ck am I here?" Michael responded that he did not know and that he was getting ready to move, whereupon Defendant OFFICER JAMES BRIGGS responded: "You ain't f*cking moving. You ain't leaving the state. You violated your PPO."

17.     The police report indicates that Defendant OFFICER JAMES BRIGGS first mentioned the dog feces in Ms. Shirley's yard and then the tire tracks through her yard, and that Michael Iwaniuz denied the PPO violations.

18.     While the police report repeatedly indicates that Mr. Iwaniuz was speaking in a loud voice throughout Defendant OFFICER JAMES BRIGGS'

4

interactions with him, Mr. Iwaniuz normal tone of voice is significantly louder than average and Defendant OFFICER JAMES BRIGGS was well aware of this based upon his prior interaction(s) with him.

19. The police report indicates that Defendant OFFICER JAMES BRIGGS reminded Mr. Iwaniuz that he had previously met with him regarding tire tracks in Ms. Shirley's yard, whereupon Michael and Shelley suggested that Ms. Shirley's son made the tracks and that they were being harassed.

20. The police report indicates that Defendant OFFICER JAMES BRIGGS invited Michael Iwaniuz outside to view the tire tracks in Ms. Shirley's yard; Mr. Iwaniusz followed BRIGGS into the yard; and, when shown the tracks, Mr. Iwaniusz stated that they were from him moving his boat.

21. However, the police report fails to note that Michael Iwaniuz indicated that tire tracks *on his own property* were from him moving his boat and trailer; he denied having driven his vehicle on Ms. Shirley's property; and he indicated that his next door neighbor drove a similar vehicle with an identical tire tread and, to the extent there may be tire tracks with that tread on Ms. Shirley's property, they may have been caused by to his next door neighbor driving on her property.

22. Michael Iwaniuz then told Defendant OFFICER JAMES BRIGGS to

5

go ahead and finish his investigation and that he was going to finish his dinner with his family, whereupon he began to walk away from the Defendant, across the approximately 800 feet of grass and concrete driveway back to his house.

23. Michael Iwaniuz did not hear Defendant OFFICER JAMES BRIGGS say anything further to him and he did not look back in his direction as he walked back to his house.

24. Once he got to his concrete driveway, he heard his wife say "Taser!," but before he could react in any manner, he heard a popping noise and he was tased and involuntarily fell mid-stride onto his face on the concrete driveway.

25. This is contrary to the police report's recitation of events, which falsely asserts: Defendant OFFICER JAMES BRIGGS told Michael Iwaniuz that he was under arrest for a misdemeanor PPO violation; IWANIUSZ then began walking toward his house; BRIGGS ordered him to stop, withdrew his Taser from its holster, began to follow him and continued to order him to stop and warned him about the Taser; and, as they approached the vehicles in the driveway and residence, BRIGGS again warned about the Taser and then deployed it, with its probes finding purchase in Michael Iwaniuz's back.

26. The police report indicates that, upon being tased, Michael Iwaniuz immediately fell to the driveway, landing forcefully upon his face.

6

27.     The police report indicates that Defendant OFFICER JAMES BRIGGS ordered Michael Iwaniuz to remain on the ground and notified dispatch of the situation and asked for medical and backup units.

28.     The police report indicates that Michael Iwaniuz was transported to Bixby Medical Center where he was treated for a broken nose and received six stitched on the bridge of his nose.

29.     Michael Iwaniuz now requires surgery to resolve the blockage in his nasal passages resulting from breaking his nose in involuntarily falling to the driveway upon being tased.

30.     However, his recently scheduled surgery was aborted because of fear that it would reopen a previously repaired cerebrospinal fluid leak into his nasal passages and Mr. Iwaniuz is now scheduled see a neurosurgical expert with regard to his nasal surgery in the immediate future.

31.     The police report indicates that Michael Iwaniuz was charged with misdemeanor violation of a personal protection order and eventually pled guilty to misdemeanor disorderly conduct.

32.     The conduct of Defendant OFFICER JAMES BRIGGS was, and remains, extreme and outrageous, subjecting him to punitive damages.

**42 U.S.C. § 1983 - FOURTH AMENDMENT EXCESSIVE FORCE**

7

33. Plaintiff repeats each of the preceding paragraphs' allegations as though they were fully set forth herein.

34. At all relevant times, with regard to the above-described incident, Mr. Iwaniusz was entitled to all rights, privileges, and immunities accorded to free citizens of the State of Michigan and of the United States.

35. Pursuant to the Fourth Amendment to the United States Constitution (made applicable to the States via the Fourteenth Amendment), at all times relevant, while Mr. Iwaniusz was seized and in the Adrian Township Police Department's custody and control, he had a right to be free from the excessive use of force against his person.

36. At all times relevant, as a police officer acting under color of state law, Defendant OFFICER JAMES BRIGGS was required to obey the laws of the United States, including those laws identified under the Fourth Amendment to the United States Constitution.

37. The conduct of Defendant OFFICER JAMES BRIGGS, as described above, deprived Mr. Iwaniusz of his clearly established rights, privileges and immunities in violation of the Fourth Amendment to the United States Constitution.

38. Defendant OFFICER JAMES BRIGGS used physical force against

Michael Iwaniusz that was objectively unreasonable and clearly excessive in light of the circumstances existing at the time.

39. Plaintiff Michael Iwaniusz was, at most, a mere non-violent misdemeanant at the time of his tasing, and disorderly conduct is not a "violent or serious crime," for purposes of determining whether a police officer used excessive force in effecting an arrest for that crime.

40. Michael Iwaniusz did not pose an immediate threat to the safety of Defendant OFFICER JAMES BRIGGS or others at the time he was tased.

41. Michael Iwaniusz was not actively resisting arrest or attempting to evade arrest by flight when he was tased by Defendant OFFICER JAMES BRIGGS, but rather, at most, was agitated by the accusations levelled against him, felt he was being harassed and walked away from where he was speaking to Defendant OFFICER JAMES BRIGGS in his yard.

42. When tased, Michael Iwaniusz had not as yet been advised that he was under arrest; was not disobeying an official command because he had not been told to "stop" or "freeze"; was not warned that he would be tased prior to being tased; and was not in a position to see that Defendant OFFICER JAMES BRIGGS had drawn his Taser and was prepared to deploy it.

43. No reasonable police officer would have understood the Fourth

9

Amendment to permit him to fire the Taser probes, override his central nervous system, and take Mr. Iwaniusz down in mid-stride (thereby creating a significant risk of serious injury) under the circumstances existing at the time.

44.   Pursuant to 42 U.S.C. § 1983, Defendant OFFICER JAMES BRIGGS is liable for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

45.   As a direct and proximate result of the actions and/or omissions of Defendant OFFICER JAMES BRIGGS, Mr. Iwaniusz suffered great physical pain, scarring and disfigurement, discomfort, humiliation, degradation, anguish, ongoing mental and emotional distress, and will need surgical intervention in the future.

46.   As a direct and proximate result of the willful violation of Mr. Iwaniusz's constitutionally-protected rights by Defendant OFFICER JAMES BRIGGS, he has sustained and is entitled to compensation for conscious pain and suffering, as well as for any economic loss and/or damages.

47.   The conduct of Defendant OFFICER JAMES BRIGGS was and remains, extreme and outrageous subjecting him to punitive damages.

WHEREFORE, Plaintiff requests the following relief:

10

a.  Reasonable medical and hospital expenses;

b.  Reasonable compensation for the pain and suffering he endured;

c.  Reasonable compensation for mental and emotional distress;

d.  Punitive and exemplary damages;

e.  Reasonable attorney fees, costs and interest; and

f.  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable pursuant to 42 U.S.C. §§ 1983 and 1988; and

g.  Such other and further relief as this Honorable Court deems reasonable and just under the circumstances.

Respectfully submitted,

**Giroux Amburn PC**

Dated: August 23, 2017

/s/ Robert M. Giroux
ROBERT M. GIROUX (P47966)
MATTHEW D. KLAKULAK (P60220)
Attorneys for Plaintiffs
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665
robert@girouxratton.com
matt@girouxratton.com

11

## JURY DEMAND

Plaintiff MICHAEL IWANIUSZ, by and through his attorneys, GIROUX

AMBURN PC, hereby demands trial by jury in this matter.

Respectfully submitted,

***Giroux Amburn PC***

Dated: August 23, 2017

/s/ Robert M. Giroux
ROBERT M. GIROUX (P47966)
MATTHEW D. KLAKULAK (P60220)
Attorneys for Plaintiffs
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665
robert@girouxratton.com
matt@girouxratton.com

12